Opinion by Judge BERZON; Concurrence by Judge FERNANDEZ; Concurrence by Judge BERZON.
OPINION
BERZON, Circuit Judge:
Appellant Manuel Guerrero-Jasso’s mother brought him to the United States from Mexico when he was eleven years old. At age twenty-six, he was found un *1189 lawfully present in California. He entered a plea of guilty to a one-count information alleging that he reentered the country without authorization after being removed — a violation of 8 U.S.C. § 1326— and received a forty-two-month sentence. He appeals the length of his sentence as exceeding the maximum sentence allowed under the operative statute. We hold that, in applying the twenty-year statutory maximum penalty instead of the two-year statutory maximum penalty, the district court impermissibly relied on facts that were neither admitted by the Defendant nor found by a jury beyond a reasonable doubt. See Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Accordingly, we vacate the sentence, and remand for further proceedings consistent with this opinion.
I.
A person convicted under 8 U.S.C. § 1326 is ordinarily subject to a fíne and a maximum term of two years imprisonment. See United States v. Mendoza-Zaragoza, 567 F.3d 431, 433 (9th Cir.2009). “Section 1326(b), however, increases the maximum sentence to twenty years if the alien’s removal “was subsequent to a conviction for commission of an aggravated felony.’ ” Id. (quoting 8 U.S.C. § 1326(b)(2)). As the language of § 1326(b)(2) makes plain, for the penalty enhancement to apply, the removal on which the conviction is predicated must have occurred after the aggravated felony conviction. See United States v. Covian-Sandoval, 462 F.3d 1090, 1097 (9th Cir.2006).
Guerrero-Jasso was charged with one count of being an alien “found in” the United States in violation of 8 U.S.C. § 1326. The government’s information alleged that he had been removed from the United States “on or about April 7, 2009, April 16, 2009, and January 19, 2011.” Although the information did not so specify, Guerrero-Jasso had been convicted on May 20, 2010 of an aggravated felony, namely, possession of a controlled substance for sale. 8 U.S.C. § 1101(a)(43)(B); see Rendon v. Mukasey, 520 F.3d 967, 976 (9th Cir.2008).
Guerrero-Jasso pled guilty to the § 1326 count without a plea agreement. In an Application for Permission to Enter Plea of Guilty, he admitted that “[o]n or about February 12, 2011, [he] was found in ... the United States after having previously been removed” and without authorization to reenter the country. The Application acknowledged that his counsel informed him that the maximum sentence was twenty years. He did not admit the dates of the prior removals.
At the plea colloquy, Guerrero-Jasso affirmed his understanding that he could face up to twenty years in prison. Guerrero-Jasso also affirmed that the Application contained a “true statement of what [he] did.” He did not otherwise admit any facts alleged in the information, including any of the prior removal dates. The government then proffered that Guerrero-Jasso had been removed “on or about April 7, 2009, April 16, 2009, and January 19, 2011.” Immediately thereafter, the district court turned to Guerrero-Jasso and stated: “Now, this is a case that is proceeding on the basis of an information. That means you didn’t go to the grand jury; do you understand that?” Guerrero-Jasso responded that he understood. The district court then accepted Guerrero-Jasso’s guilty plea, without asking him to admit to any of the alleged dates of removal.
Prior to sentencing, the probation office prepared a presentence report, “PSR,” which listed each of the three alleged removal dates. The PSR also stated that “[o]n March 28, 2011 ... Guerrero-Jasso provided a written statement” to an Immigration and Customs Enforcement agent *1190 “attesting to his ... prior deportations.” The PSR recommended that because Guerrero-Jasso had reentered the United States after being removed in January 2011 following his 2010 aggravated felony conviction, the maximum sentence was twenty years. See 8 U.S.C. § 1326(b)(2).
In his sentencing memorandum, Guerrero-Jasso objected to the PSR on the ground that his guilty plea “admitt[ed] only the facts necessary for a bare conviction” under 8 U.S.C. § 1326, not the “sentence-enhancing fact[ ]” that he had been removed after conviction for an aggravated felony. After the government obtained three continuances of the sentencing hearing, it introduced three execution of warrant forms, indicating that an immigration officer had witnessed Guerrero-Jasso’s removal on each of the three dates in question.
At the final sentencing hearing, the district court stated that it was not relying on the warrants of removal (although it rejected the defense’s motion to strike those documents). Instead, the court ruled that Guerrero-Jasso could be subject to the enhanced twenty-year maximum sentence because he had sufficiently admitted to all the dates of removal by pleading guilty to the information. Accordingly, Guerrero-Jasso was sentenced to forty-two months, considerably more than the twenty-four-month maximum penalty for violations of § 1326 without the enhancement.
II.A.
Guerrero-Jasso’s sole contention on appeal is that under Apprendi, it was error to apply 8 U.S.C. § 1326(b)’s increased statutory maximum, because his guilty plea to the essential elements of 8 U.S.C. § 1326(a) did not establish that he had been removed after an aggravated felony conviction.
The rule established in Apprendi requires that, “ ‘[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum ... be submitted to a jury, and proved beyond a reasonable doubt,’ ” Mendoza-Zaragoza, 567 F.3d at 434 (quoting Apprendi, 530 U.S. at 490, 120 S.Ct. 2348) (first alteration in original), or “admitted by the defendant,” United States v. Zepeda-Martinez, 470 F.3d 909, 910 (9th Cir.2006). As applied to § 1326, the Apprendi principle requires that to trigger § 1326(b)’s twenty-year-maximum sentence, facts establishing that the removal occurred after an aggravated felony conviction must be admitted by the defendant or proved to a jury.
Such facts can be established in one of two ways. First, the defendant can admit to, or the jury could find, the requisite sequence — i.e., the “fact that [the defendant] had been removed after his conviction.” Mendoza-Zaragoza, 567 F.3d at 434 (emphasis in original). In that event, the precise date of the post-conviction removal need not be proven or admitted. Id. Alternatively, the date of the defendant’s post-conviction removal can be admitted by the defendant or proven to a jury. As the date of a prior conviction need not itself be proven beyond a reasonable doubt, see United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir.2000) (explaining that Apprendi preserved the rule of Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and “carved out an exception [to the Apprendi rule] for ‘prior convictions’”), admission or proof of the removal date is sufficient to establish eligibility for the § 1326(b) enhancement. Such admission or proof allows for a constitutionally proper determination of “whether the removal had followed the [qualifying] conviction in time.” Mendoza-Zaragoza, 567 F.3d at 434 (emphasis in original) (quoting United States v. Sala *1191 zar-Lopez, 506 F.3d 748, 751 (9th Cir.2007)).
In this case, however, Guerrero-Jasso entered a guilty plea to a criminal information that listed three separate removal dates, in the conjunctive. “[W]hen either ‘A’ or ‘B’ could support a conviction, a defendant who pleads guilty to a charging document alleging ‘A and B’ admits only A’ or ‘B.’ ” Young v. Holder, 697 F.3d 976, 988 (9th Cir.2012) (en banc). We therefore treat Guerrero-Jasso’s guilty plea as admitting only that one of the three removal dates is correct, not that all are correct.
As it turns out, just one of the three removal dates, the removal on January 19, 2011, occurred after May 20, 2010, the date of the qualifying conviction. Guerrero-Jasso did not admit that he was removed on the 2011 date; he only admitted that he was removed on one of the three dates alleged, not which one. So the entry of the guilty plea alone could not justify application of the § 1326(b) enhancement. See id. at 987-88. And it was the “government[’s] ... burden ‘at the plea colloquy to seek an explicit admission of any unlawful conduct it [sought] to attribute to the defendant,’ ” United States v. Hunt, 656 F.3d 906, 912 (9th Cir.2011) (quoting United States v. Thomas, 355 F.3d 1191, 1199 (9th Cir.2004)), here, the fact of a removal date subsequent to the qualifying conviction. The government sought no such admission, and Guerrero-Jasso did not make one.
This much the government concedes, acknowledging both that, “to support the application of Section 1326(b)’s penalty provision, Guerrero-Jasso had to admit the January 19, 2011[ ] removal date,” and that “[h]is plea to the conjunctively[ ] phrased information does not provide a specific admission to that single removal date.” The government goes on to base its opposition to Guerrero-Jasso’s appeal on three factors not dependent on the guilty plea itself: First, the government maintains that Guerrero-Jasso constructively accepted the facts contained in the PSR; second, the government points to Guerrero-Jasso’s post-arrest, written confession; and third, the government relies upon the court’s statement during the plea colloquy that Guerrero-Jasso faced a twenty-year maximum sentence. According to the government, these documents and statements have the same legal effect as an express admission during a plea colloquy. We disagree.
First, as to the PSR, Guerrero-Jasso was not presented with the PSR’s alleged removal dates until after his conviction, and never specifically acceded to them. “When a conviction is obtained through a guilty plea rather than a jury verdict,” it is the government’s burden “to seek an explicit admission of any unlawful conduct it seeks to attribute to the defendant” for Apprendi purposes. Hunt, 656 F.3d at 912 (internal quotation marks and citations omitted). Guerrero-Jasso’s non-objection at sentencing to facts recited in the PSR cannot meet this standard.
With regard to the “post-arrest confession” cited by the government, the confession itself is not in the record. The government cites the PSR as support for its interpretation of the confession, but the PSR states only that “Mr. Guerrero-Jasso provided a written statement attesting to his illegal status [and] prior deportations.” The PSR’s recitation of the confession thus neither specifies the removal dates nor specifies that Guerrero-Jasso admitted any particular removal dates.
At any rate, an out-of-court confession cannot alone suffice to meet the Ap-prendi trial-by-jury and beyond-a-reasonable-doubt requirements with regard to facts essential to establishing the maximum penalty for the crime of conviction. If it could, there would be no need ever to *1192 have a trial or an in-court plea and admission in a case in which there was an out-of-court confession — obviously a nonsensical proposition, even where the admissibility (as opposed to the content) of the out-of-court confession is not at issue. We treat defendant admissions as analogous to jury findings beyond a reasonable doubt for Apprendi purposes only when those admissions are made with knowledge of the penal consequences that attend those admissions. See United States v. Cazares, 121 F.3d 1241, 1247 (9th Cir.1997) (noting that “to attribute to a defendant an admission which was never subject to a plea colloquy under Fed.R.Crim.P. 11 would undermine the rule’s prophylactic purposes”).
Finally, Guerrero-Jasso’s acknowledgment of a twenty-year statutory maximum sentence during the plea colloquy was not an admission of the conviction/removal sequence, nor of the dates of removal. During a plea colloquy, judges are not required “to predict the precise maximum penalty at sentencing. Instead, the court need only tell defendants the maximum sentence that they could possibly face.” Garcia-Aguilar v. U.S. Dist. Court for the S. Dist. of Cal., 535 F.3d 1021, 1025 (9th Cir.2008) (internal citation omitted).
Here, it was entirely proper for the court to ensure Guerrero-Jasso was aware of the twenty-year penalty. At that point in the colloquy, it was not yet clear whether the district court would require Guerrero-Jasso to admit the 2011 removal date as a condition of accepting his plea. So the maximum sentence Guerrero-Jasso could “possibly” face going into the plea colloquy was twenty years: His acknowledgment that he was advised of this possibility is not an admission of the facts essential to establish the applicability of the twenty-year maximum sentence.
B.
As none of the government’s current arguments are adequate to sustain the conclusion that Guerrero-Jasso admitted to the necessary sequencing facts, we must assess the district court’s quite different rationale for adopting the enhanced twenty-year maximum. In deciding to sentence Guerrero-Jasso in accordance with the twenty-year statutory maximum, the district court read Mendoza-Zaragoza, 567 F.3d 431, as holding that a guilty plea to a § 1326 indictmeht which alleges multiple removal dates establishes as a fact each removal date. That interpretation of Mendoza-Zaragoza is not correct.
Mendoza-Zaragoza was charged with removal dates, but not with a prior conviction. He sought to enter a guilty plea that did not “admit any facts that would subject him to § 1826(b)’s sentence enhancement.” Id. at 433. The district court “refused to accept” such a plea, and, as a condition of accepting the plea, required the defendant to “admit[] his removal dates.” Id. On appeal, we held that the district court did not abuse its discretion in conditioning acceptance of the plea on the detailed admission, because the indictment “alleged facts (his removal dates) sufficient to support the sentence enhancement. under § 1326(b).” Id. at 437.
More specifically, Mendoza-Zaragoza held, first, “that an indictment will support the § 1326(b) sentence enhancement if it alleges a removal date.” Id. at 434. That is true as far as the sufficiency of the indictment is concerned. Although Apprendi requires that “any fact ... that increases the maximum penalty for a crime must be charged in an indictment,” 530 U.S. at 476, 120 S.Ct. 2348 (internal quotation marks omitted), Almendarez-Torres excepts prior convictions from all of Apprendi’s requirements, including the requirement that facts essential to establish *1193 ing penalty exposure be alleged in the indictment, Almendarez-Torres, 523 U.S. at 226-27, 118 S.Ct. 1219. Thus, for purposes of a § 1326(b) enhancement, no allegation in the indictment of the date of the pre-removal conviction is necessary: “[A]n indictment will support a 20-year maximum sentence under § 1326(b) if it alleges a removal date, thus enabling a sentencing court to determine whether the conviction predated the defendant’s removal to establish the necessary sequence.” Mendoza-Zaragoza, 567 F.3d at 436.
In addition to an indictment alleging facts essential to establish the maximum sentence, Apprendi mandates proof to a jury of those essential facts beyond a reasonable doubt, or a clear admission to the pertinent fact, adequate to waive the constitutional proof requirement. As to this aspect of Apprendi Mendoza-Zaragoza held only that a district court has the discretion to require a defendant to admit a specific removal date before accepting a guilty plea to a § 1326 charge, thereby satisfying the Apprendi proof requirements. Id. at 437.
The district court in this case accepted Guerrero-Jasso’s plea without requiring him to admit to the removal date essential to the enhanced sentence. As Guerrero-Jasso did not admit to the 2011 removal date, the district court’s sentence of more than two years, unlike the sentence in Mendoza-Zaragoza, did not rest on an admission by the defendant, and so violated Apprendi.
III.
Not all violations of Apprendi warrant reversal. A properly preserved Apprendi error is reviewed for harmless error, see Washington v. Recuenco, 548 U.S. 212, 222, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), under the standard articulated in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). See Zepeda-Martinez, 470 F.3d at 913.
Guerrero-Jasso preserved his Apprendi claim by expressly stating at sentencing that he had never admitted the January 2011 removal date and arguing that his sentence thus could not exceed two years. The Apprendi error was, of course, a constitutional one. We must therefore reverse unless we “find[ ] beyond a reasonable doubt that the result Vould have been the same absent the error.’ ” Zepeda-Martinez, 470 F.3d at 913 (quoting Neder, 527 U.S. at 19, 119 S.Ct. 1827); see Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). “[W]here the record contains ‘overwhelming’ and ‘uncontroverted’ evidence supporting an element of the crime, the error is [constitutionally] harmless.” Zepeda-Martinez, 470 F.3d at 913 (quoting Neder, 527 U.S. at 17, 18, 119 S.Ct. 1827).
The government asks us to approve Guerrero-Jasso’s sentence on the basis of (1) a warrant of removal it introduced post-conviction and (2) GuerreroJasso’s alleged acceptance of the PSR. The government maintains that this post-conviction evidence proves any constitutional error harmless beyond a reasonable doubt, arguing that the circumstances of this case are indistinguishable from the facts of Zepeda — Martinez.
In Zepeda-Martinez, a warrant of removal showed “Zepeda was ordered removed on June 8, 2004 and was physically removed ... on foot on June 17, 2004.” Id. The warrant included “Zepeda’s name, signature, fingerprint, and immigration case number, as well as the name, title, and signature of an immigration officer who witnessed the removal.” Id. Noting that “Zepeda did not dispute the authenticity of this document,” and that “Zepeda himself had offered the first page of the same warrant as an exhibit” pretrial, the *1194 court concluded that the warrant was “sufficient alone to support a finding of removal beyond a reasonable doubt.” Id. As a result, the evidence of the essential removal date was “overwhelming” as well as “uncontroverted,” thereby satisfying the constitutional harmless error standard. Id.
The record before this court includes a somewhat similar document. But unlike the document in Zepedar-Martinez, the first page of which was filed pre-trial by the defendant himself, Guerrero-Jasso has never vouched for the accuracy and reliability of this document. Indeed, unlike Zepeda-Martinez, who “did not contest ... the authenticity of the warrant of removal,” Hunt, 656 F.3d at 914, Guerrero-Jasso made a timely objection that the removal warrant should not be admitted, arguing that it was aimed solely at the appellate court’s harmless-error determination, was “inadequately authenticated,” “insufficient,” and included only the exeeution-of-warrant documentation, “not the warrant itself.” The district court never resolved these objections, because it found — erroneously, as we have explained — that Guerrero-Jasso had adequately admitted to the pertinent removal date.
We thus disagree that the facts before us are indistinguishable from those in Zepeda-Martinez, and cannot conclude beyond a reasonable doubt, on the record before us, that the Apprendi error in Guerrero-Jasso’s case was harmless.
By objecting to the execution-of-warrant form as inauthentic and incomplete, Guerrero-Jasso challenged the government’s belated evidentiary basis for proving his removal date. The government’s evidence cannot, therefore, be described as “uncontroverted.” See Black’s Law Dictionary (9th ed.2009) (defining “controvert” as “[t]o dispute or contest; esp. to deny (as an allegation in a pleading) or oppose in argument”). And we cannot say beyond a reasonable doubt that a jury would necessarily have relied on this evidence, even if it were admitted as prima facie authentic.
In Hunt, we refused to declare an Ap-prendi error harmless, in part because, as the essential, omitted fact was “never litigated,” the “plea and sentencing proceedings ... provide[d] an inadequate record” for our harmless-error review. 656 F.3d at 915. In so concluding, we noted that:
If Hunt’s case had proceeded to trial, he could have raised Sixth Amendment or evidentiary objections, he could have presented expert testimony to counter the opinions of Detective Feliciano, he could have cross-examined the various civilian and government witnesses called by the government, and he could have decided to testify to tell his side of the story.
Id. at 916. Here, had Guerrero-Jasso had the opportunity to challenge the authenticity of the warrant at trial, he could have pointed out the absence of live testimony from the immigration officer who signed the execution of warrant, as well as the absence of any testimony as to the form’s chain of custody. Cf. United States v. Estrada-Eliverio, 583 F.3d 669, 671-73 (9th Cir.2009) (holding that the government made a prima facie showing of authenticity of a warrant of removal where the immigration agent who maintained the defendant’s immigration file testified at trial as to his record-keeping practices and that the warrant admitted was a true and correct copy of the warrant in the defendant’s file). On those bases, Guerrero-Jasso could have argued that there was not proof beyond a reasonable doubt that the document was what it purported to be.
The government contends that Guerrero-Jasso’s objections did not sufficiently controvert the government’s evidence, be *1195 cause he did not meaningfully place the accuracy of the document into dispute and failed to “raise[] evidence sufficient to support a contrary finding.” Neder, 527 U.S. at 19, 119 S.Ct. 1827.
We disagree that Guerrero-Jasso’s challenge to the authenticity of the government’s evidence was not “meaningful.” By challenging the document as unauthenticated, he disputed the government’s assertion that the document was what the government said it was. This challenge is a meaningful one, as it goes to the likelihood that a jury would find the necessary removal date beyond a reasonable doubt. Cf. Zepeda-Martinez, 470 F.3d at 913. In similar circumstances, Hunt refused to characterize the government’s evidence of a post-arrest confession as “overwhelming” evidence of an essential, omitted fact, where the defendant “presented non-frivolous arguments contesting the reliability of the statement.” 656 F.3d at 915.
More fundamentally, we reject the government’s suggestion that a defendant in Guerrero-Jasso’s position has an affirmative obligation to introduce evidence post hoc to defeat the government’s harmlessness argument. The government cites the statement in Zepedar-Martinez that a constitutional “error is not harmless if ‘the defendant contested the omitted element and raised evidence sufficient to support a contrary finding,’ ” 470 F.3d at 913 (quoting Neder, 527 U.S. at 19, 119 S.Ct. 1827), as support for such a requirement. But when placed in its proper context, this statement does not obligate a defendant to introduce evidence during sentencing to establish that the government’s error was harmless. Zepedar-Martinez was quoting Neder, in which the Court explained that, to “safeguard[ ] the jury guarantee,” courts will often need to “conduct a thorough examination of the record” before concluding that a constitutional error was harmless. 527 U.S. at 19, 119 S.Ct. 1827. Neder went on to explain: “If ... the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error — for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding — it should not find the error harmless.” Id. (emphasis added).
The example provided in Neder is not the only way a constitutional error can be ruled not harmless; it is one way. Where, as here, there was no trial but a guilty plea, and the evidence is introduced post-conviction by the government only to demonstrate harmlessness, it would fundamentally undermine the Apprendi protections to require the defendant affirmatively to present evidence to counter facts that were never properly established in accord with Apprendi in the first place.
Finally, the government asserts that any constitutional error was harmless because Guerrero-Jasso “accepted” the prior removal dates as expressed in the PSR. But in his sentencing memorandum, Guerrero-Jasso continued to assert that his plea “admitted only the facts necessary for a bare conviction,” not the “sentence-enhancing fact” of a specific removal date, and he objected to the PSR’s sentencing calculations, insisting that the two-year statutory maximum cabined his sentence. At sentencing, Guerrero-Jasso continued to object to the enhancement and did not specifically accede to the PSR’s recitation of the dates of removal. In light of Guerrero-Jasso’s challenges to the removal warrant and his continued protestations at sentencing, the lack of an express objection to the removal dates recited in the PSR does not alone satisfy the “overwhelming and un-controverted” evidentiary standard in this case.
For these reasons, the sentence must be vacated, and the case remanded. On re *1196 mand, the district court must sentence Guerrero-Jasso in accordance with the statutory maximum penalty applicable to the offense he admitted when he entered his guilty plea. See Hunt, 656 F.3d at 917.
VACATED and REMANDED.